# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DOLLY ASSABATI DE BELLO,

      Plaintiff,

v.                                      Case No. 8:22-cv-2903-WFJ-JSS

ALUTIIQ, LLC d/b/a Shield Point, LLC,

      Defendant.

_____/

## ORDER

Before the Court is Defendant's Motion to Dismiss this action (Dkt. 17), Plaintiff's response (Dkt. 18), and Defendant's reply (Dkt. 19). After careful consideration of the allegations of Plaintiff's Amended Complaint (Dkt. 9), the parties' submissions, and the applicable law, the Court grants the motion with leave to amend.

## BACKGROUND

Plaintiff Dolly Assabati De Bello sues her former employer for race discrimination in violation of 42 U.S.C. § 1981; retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and violations under Florida's Private Whistleblower Act ("FPWA"), Fla. Stat. §§ 448.101–105. Plaintiff's Amended Complaint sets forth the following facts, which are presumed true.

Plaintiff is Asian Hispanic.  Dkt. 9 ¶ 8.  She was born in Syria and raised in Venezuela.  *Id.*  She was employed by Defendant Alutiiq, LLC d/b/a Shield Point, LLC from March 2018 through March 2021.  *Id.* ¶ 10.  Shield Point is an Alaskan entity doing business in Florida.  *Id.* ¶ 12.  During her three years of employment, she worked at a U.S. military facility as a Security Escort and Screener.  *Id.* ¶ 10.

Plaintiff alleges that soon after she was employed, her coworkers learned she was born in Syria and began referring to her as the "enemy."  *Id.* ¶ 17.  She claims she reported this treatment to her supervisors, but no action was taken.  *Id.* ¶ 18.

In August 2019, Plaintiff told the program manager, Timothy Farley, that she intended to report a coworker, Officer Johnson, for entering a secure area wearing an Apple watch covered with a towel.  *Id.* ¶ 19.  Mr. Farley asked Plaintiff not to report the security breach and called her a "gossip."  *Id.* ¶ 21.  Plaintiff reported the violation, which, she claims, "resulted in a pattern of harassment, volatile behavior and aggressive conduct."  *Id.* ¶ 31.

Plaintiff maintains that she became the subject of various forms of discrimination after the reporting incident "because of her race and national origin."[1]  *Id.* ¶ 22.  A coworker told her that "Asians suck."  *Id.*  She was mocked for her accent by another coworker.  *Id.*  Another displayed his knowledge of the

---

[1] Only once does the term "national origin" appear in the pleading.  All other references are to "race."

Spanish language to her by speaking every foul word he knew in Spanish. *Id*. And yet another employee told a personnel management clearance investigator that Plaintiff should be denied security clearance because she spoke Spanish. *Id*.

Plaintiff alleges she complained to Defendant about these incidents to no avail. *Id*. ¶ 23. She claims mistreatment became more frequent, which created a hostile work environment. *Id*. ¶ 24. One time Plaintiff found a note in the company phone roster that read "Dolly sucks." *Id*. Plaintiff claims she was denied lunch breaks, training time, and was subjected to constant changes in work schedule. *Id*. ¶ 26. According to Plaintiff, she was not permitted to leave her post unattended, and one day, she urinated on herself. *Id*. ¶ 27. A coworker then teased her about needing pampers. *Id*. ¶ 28.

Plaintiff decided at this point to take FMLA leave to manage her mental health. *Id*. ¶ 29. While she was out on FMLA leave, Defendant's president sent her a letter "advising her that she would be reprimanded for directly communicating with Defendant's client" even though Plaintiff contends the client first contacted her. *Id*. ¶ 30. Before returning to work, Plaintiff resigned. *Id*. ¶ 31.

## DISCUSSION

In reviewing the amended complaint, the Court accepts all factual allegations, not legal conclusions, as true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (concerning reasonable inferences); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating legal conclusions "couched" as facts need not be accepted as true).[2]  To survive a motion to dismiss filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., the complaint must contain sufficient facts to state a claim for relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is "plausible on its face" when the content of the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 566).

Defendant challenges the sufficiency of all three counts.  The Court addresses each in turn.

### Count I: Race Discrimination under 42 U.S.C. § 1981

Plaintiff alleges that she is an "Asian Hispanic female born in Syria and raised in Venezuela."  Dkt. 9 ¶ 8.  She claims that various coworkers called her "the enemy," told her "Asians suck," mocked her Spanish accent, spoke foul language to her in Spanish, and told Defendant that she should not receive security clearance because she spoke Spanish.  *Id*. ¶¶ 17, 22.[3]  Count I describes the type of

---

[2] *See also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (stating "legal conclusions masquerading as facts" will not prevent dismissal).

[3] Plaintiff also alleges an employee wrote a note that reads "Dolly sucks," and another coworker told her she needed pampers. Dkt. 9 ¶¶ 24, 28.  Neither of these two statements are based on a protected characteristic or trait.

discrimination Plaintiff suffered as "race" discrimination under 42 U.S.C. § 1981. *Id*. ¶¶ 33, 34, 36, 38,42.  As a result of these incidents, Plaintiff alleges that she voluntarily resigned.  *Id*. ¶ 31.

Defendant argues that, although Plaintiff brings Count I for discrimination based on race, the facts as alleged are based on national origin.  Dkts. 17 at 2, 7; 19 at 2.  Defendant further contends that even if these alleged acts were covered by § 1981, Plaintiff fails to allege either disparate treatment or harassment.

The Court begins by noting that § 1981 does not protect discrimination based on national origin.  Dkt. 17 at 7; *see Subotic v. Jabil, Inc.*, 8:21-cv-2137-VMC-SPF, 2022 WL 10487074, at *13 (M.D. Fla. Oct. 18, 2022) (noting that § 1981 does not protect retaliation based on national origin).  Nor does § 1981 protect against discrimination based on birthplace, language, or accent, which is more akin to ethnicity or national origin.  Dkt. 19 at 2; *see Abunaw v. Prince George's Corrs. Dep't*, No. DKC 13-2746, 2014 WL 413208, at *2 (D. Md. Feb. 3, 2014) (denying motion to amend complaint, as futile, and noting that mimicking an accent and making statements about birthplace are indicative of national origin discrimination, which is not covered by § 1981).  Defendant suggests that Plaintiff relies on "race" as opposed to national origin or ethnicity because Title VII does not apply to Defendant, an Alaskan Native corporation.  Dkt. 19 at 3 n.2.

The Court largely agrees with Defendant and grants Plaintiff leave to replead Count I.  In doing so, Plaintiff must allege a factual claim of discrimination under §1981, if it is her intention to proceed under this statute.  An unknown employee stating "Asians suck" on one unspecified date, standing alone, does not provide a factual basis for a claim based on racial discrimination.

Assuming Plaintiff can surmount this obstacle of alleging discrimination covered by this statute, Count I must also contain factual allegations demonstrating an adverse employment action, disparate treatment, harassment, and any other claim.  A single rude insult does not form the basis of a § 1981 claim.  *See Parker v. Sw. Airlines Co.*, 406 F. Supp. 3d 1328, 1336 (M.D. Fla. 2019).  Any disparate treatment, harassment, or hostile work environment claim must be attributable to a protected category.  Count I is dismissed without prejudice.

### *Count II: Violations under the FMLA*

The FMLA provides for two types of claims: interference and retaliation. Employers are prohibited from "interfere[ing] with, restrain[ing] or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (interference).  Employers also must not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  *Id*. § 2615(a)(2) (retaliation).  Subsection (2) is referred to as the anti-retaliation provision.  *See Hogancamp v. Cnty. of Volusia*,

6

316 F. Supp. 3d 1354, 1356 n.1 (M.D. Fla. 2018) (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000)).

*Retaliation*

For FMLA retaliation, Plaintiff must provide facts showing that 1) she engaged in an activity protected by the FMLA, 2) she suffered an adverse employment decision or action, and 3) the decision was causally related to the protected activity. *See Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004) (citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). Additionally, retaliation requires proof that the employer intended to discriminate against the employee for exercising an FMLA right. *Martin v. Brevard Cnty. Public Schools*, 543 F.3d 1268, 1267 (11th Cir. 2008) (*per curiam*). To satisfy the intent requirement, the employee must show that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Martin*, 543 F.3d at 1267–68 (quoting *Strickland*, 239 F.3d at 1207).

Plaintiff relies on two acts or omissions to support her retaliation claim. The first concerns Defendant's failure to provide the FMLA paperwork. *Id*. ¶ 52. In conclusory fashion, Plaintiff asserts that her expectation of receiving the paperwork constitutes statutorily protected activity. *Id*. ¶ 53. Defendant takes

issue with these allegations because they fail to state that she was deprived of any right protected under the FMLA.

Defendant is correct.  Plaintiff was already engaged in the protected activity of taking FMLA leave, which she acknowledges numerous times.  Dkt. 9 ¶ 30 ("while out on FMLA leave"); ¶ 55 ("while on leave"); ¶ 57 ("while on FMLA leave").  Nevertheless, Plaintiff relies on her anticipation of receiving forms, an unmet expectation, to justify her resignation at some unknown point during her leave.  These allegations do not assign the necessary discriminatory intent to Defendant in failing to provide the papers.  It is difficult to imagine on these factual allegations how this omission could plausibly provide a foundation for retaliation.

The second retaliatory act is Defendant's sending the letter of reprimand while Plaintiff was out on FMLA leave.  *Id*. ¶ 55.  The letter scolded her for "directly communicating with Defendant's client."  *Id*. ¶ 30.  Defendant argues that the receipt of the letter from Defendant's President does not amount to an adverse employment action and Plaintiff does not tie the letter to "an impermissible animus related to her invoking her rights under the FMLA."  Dkt. 17 at 2, 16.

As with the failure to receive paperwork, Plaintiff does not allege that her taking FMLA leave had anything to do with Defendant's sending the letter.  She attributes her decision to separate from Defendant to her alleged mistreatment by

8

her coworkers, who were allegedly mistreating her because she is Asian Hispanic and because she reported a coworker's security violation (when he hid an electronic device from view in a prohibited area).  These actions occurred long before Plaintiff received the letter.  Although Plaintiff mentions that "the threat of being reprimanded" played a role in her decision to resign (*id*. ¶ 31), she does not allege Defendant sent a letter of reprimand to retaliate against her for taking FMLA leave.[4]  Even if her resignation were considered a constructive discharge (which is not alleged), the separation from Defendant was not alleged to have been caused by, or the result of, her taking FMLA leave.

Rather than urging the viability of her retaliation claim, Plaintiff responds that she seeks relief for interference.  Dkt. 18 at 7–10.  Understandably, Defendant did not address FMLA interference in its motion because Count II not only is labeled "FMLA Retaliation" but cites only to § 2615(a)(2), the anti-retaliation clause.  Dkt. 9 at 12–13.  The language of this count is also clearly couched in terms of retaliation, not interference.  *Id*.  Notwithstanding, the sufficiency of Count II as one for FMLA interference is now addressed.

---

[4] A material adverse action for purposes of the FMLA means that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker" from engaging in protected activity.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  A letter of reprimand does not necessarily constitute adverse employment actions under the FMLA.  *See McLeod v. Florida*, No. 4:11-cv-496/RS-CAS, 2012 WL 2004498, at *6 (N.D. Fla. June 5, 2012) (dismissing FMLA retaliation claim because written reprimand did not qualify as an adverse employment action).

*Interference*

To allege interference, a plaintiff must satisfy three elements: (1) she was eligible for FMLA benefits; (2) her employer denied her those benefits; and (3) she must "demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit." *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023) (citations omitted). Unlike retaliation, interference does not require a causal link—that an adverse employment action was caused by taking FMLA leave. *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1309 (11th Cir. 2011) (noting that Eleventh Circuit law "make[s] clear that a causal nexus is not an element of an interference claim"). Also, unlike retaliation, an interference claim does not place "the increased burden" on the plaintiff to show that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207. An employee need not allege that the employer intentionally denied the FMLA benefits—because "the employer's motives are irrelevant." *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018) (quoting *Strickland*, 239 F.3d at 1208); *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (same).

Count II does not state a claim for FMLA interference. It is unclear how Defendant's failure to provide paperwork, a technical non-compliance, harmed Plaintiff. *See Graves*, 67 F.4th at 1122 (noting that employee must suffer harm

from employer's failure to notify of FLMA rights). She received her FMLA leave. *Id*. (stating precedent holds that employer's violation of notice requirements does not harm employee who receives requested time off and is paid) (citing *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020)). She has not alleged that she resigned, or was caused to resign, because Defendant failed to give notice.

As to the letter of reprimand, Plaintiff argues in her response that it signified a continuation of the harassment she had received at work, which contributed to her decision to resign. Dkt. 18 at 10. As part of this count, she alleges that the letter "exacerbate[d] her mental anguish . . . in furtherance of the hostile work environment she had been subjected to prior to her FMLA leave." Dkt. 9 ¶ 57. As to mental stress, the FMLA does not offer redress for emotional damages or loss of job security. *See* 29 U.S.C. § 2617(a); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999).[5] Nor has a theory of hostile work environment under the FMLA been recognized. *See Frizzell v. Delta Air Lines, Inc.*, No. 1:19-cv-1573-TWT-JSA, 2019 WL 5459074, at *9 (N.D. Ga. Aug. 29, 2019) (dismissing FLMA count asserting retaliatory hostile work environment theory, even assuming one were cognizable), *adopted by* 2019 WL 11441426 (N.D. Ga. Oct. 9, 2019). Count II must therefore be dismissed.

---

[5] *See also Conan v. Web.com Group, Inc.*, No. 3:19-cv-87-J-32JRK, 2020 WL 7385326, at *5–6, n.5 (M.D. Fla. Dec. 16, 2020).

## *Count III: Violations of the FPWA*

The anti-retaliatory provision of the FPWA states that an employer may not "take retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Fla. Stat., § 448.102(3).  Three elements are necessary to establish a *prima facie* case under the FPWA: (1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) the adverse employment action was causally linked to the protected activity.  *Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d 1223, 1226 (M.D. Fla. 2017).

Plaintiff alleges her "refusal not to report" her coworker's security violation led to "a hostile work environment resulting in Plaintiff's need to take FMLA leave to manage her mental health which ultimately resulted in her constructive termination."  Dkt. 9 ¶ 69.  Specifically, she characterizes "Defendant's behavior towards Plaintiff" as retaliation for her refusal "to overlook Officer Johnson's security breach."  *Id*. ¶ 70.

Defendant contends that Count III is deficient because Plaintiff alleges that she objected to the conduct of a coworker as opposed to any activity, policy, or practice of Defendant.  Also, Defendant challenges the absence of any causal

connection between reporting her coworker and her resignation or constructive discharge.  The Court agrees.

With respect to the alleged violation, both parties raise the issue of whether the protected activity requires a "reasonable belief" on the part of the plaintiff that the action violates a policy or practice, or an "actual violation" of an employer's policy.  The Florida state appellate courts do not agree on the appropriate standard.[6]  Nor do the federal district courts.  *Compare*, *e.g.*, *Fonseca v. Ferman Motor Car Co.*, No. 8:17-cv-568-T-30TGW, 2018 WL 3610541, at *6 (M.D. Fla. July 27, 2018) (determining FPWA requires actual violation of a law *with Nardella v. Atlantic TNG, LLC*, No. 8:19-cv-1152-T-33JSS, 2020 WL 2331179, at *11–12 (M.D. Fla. May 11, 2020) (determining FPWA requires only an "objectively reasonable belief" that employer's policy or practice violates a law).

Without deciding unequivocally which standard applies, the Court determines that Count III does not sufficiently allege a claim under the FPWA under any standard.  *See United States v. Orlando Heart & Vascular Ctr.*, *LLC*, No. 6:19-cv-1884-CEM-DCI, 2022 WL 4483723, at *6–7 (M.D. Fla. May 2, 2022) (noting discrepancies in the state opinions and refraining from deciding which

---

[6] *See Briggs v. Quantitech Inc.*, No. 21-11448, 2022 WL 1308494, at *3 (11th Cir. June 2, 2022) (unpublished opinion) (citing *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. 2d DCA 2015) and *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2014)).  Although not binding precedent, *Briggs* may be cited as persuasive that a split among Florida courts exists.  *See McNamara v. Gov. Employees Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); Fed. R. App. 32.1; 11th Cir. R. 36-2.

position is correct).  Plaintiff fails to articulate what law, rule, or regulation Defendant was violating and what actions of Defendant violated such law under either the "actual violation" or "objectively reasonable belief" standard.  Count III is therefore dismissed.

Accordingly, Defendant's Motion to Dismiss (Dkt. 17) is granted with leave to amend.  The Amended Complaint (Dkt. 9) is dismissed without prejudice.  If Plaintiff desires to replead her claims, a second amended complaint must be filed within twenty-one (21) days.  The Plaintiff must properly name the Defendant as Shields Point, LLC, which is the Defendant's correct registered name according to Defendant.  Defendant's response is due fourteen (14) days later.

**DONE AND ORDERED** at Tampa, Florida on August 8, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record